UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESS SARVER, Derivatively On Behalf of RAIT FINANCIAL TRUST, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |
| Plaintiff, | | |
| v. | | |
| BETSY Z. COHEN, DANIEL G. COHEN, EDWARD S. BROWN, FRANK A. FARNESI, S. KRISTIN KIM, DANIEL PROMISLO, JOHN F. QUIGLEY, III, and MURRAY STEMPEL, III, | | |
| Defendants, | | JURY TRIAL DEMANDED |
| -and- | | |
| RAIT FINANCIAL TRUST, a Delaware corporation, | | |
| Nominal Defendant. | | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS AND UNJUST ENRICHMENT**

Plaintiff, by her attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

**NATURE OF THE ACTION**

1. This is a shareholder derivative action brought by a shareholder of RAIT Financial Trust ("RAIT" or the "Company"), on behalf of the Company, against certain of its management and trustees, seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred between January 2007 and the present (the "Relevant Period") and that have caused substantial losses to RAIT and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because complete diversity exists between plaintiff and each defendant, and the amount in controversy exceeds $75,000. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

3. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by such courts permissible under traditional notions of fair play and substantial justice.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the transaction and wrongs complained of herein occurred in this District. Further, one or more of the defendants either resides in or maintains executive offices in this District, and defendants have received substantial compensation in this District by conducting business here, which has had an effect in this District.

## SUMMARY OF THE ACTION

5. RAIT is a real estate investment trust which invests in residential and commercial mortgages. On December 11, 2006, the company announced the completion of a merger with Taberna Financial Realty Trust ("Taberna"). Taberna was made a subsidiary of RAIT, and continued its business of purchasing trust preferred securities and repackaging them into collateralized debt obligations ("CDOs") which it resells to investors. Typically, RAIT keeps the riskier debt portions and sells the higher grade debt.

6. The announcement and the press coverage of the merger stressed the synergies to be gained and the combined capabilities of the companies. There was no disclosure of the tremendous risk and exposure Taberna faced due to its shaky portfolio.

7. On Thursday, August 2, 2007, RAIT disclosed that it has roughly $95 million in exposure to American Home Mortgage, a company which is presently teetering on the brink of bankruptcy. In addition, RAIT has another $182 million of exposure to mortgage lenders who may face problems similar to those of American Home Mortgage.

8. The defendants watched the deterioration of the Taberna portfolio since its acquisition but, fearful of losing the positions they hold, neither disclosed nor addressed these problems to the point where they worsened and have endangered the members' dividends.

9. In addition, RAIT's share price collapsed when the Company made the August 2 announcement, sinking to a year-long low of $4.82 on August 6, 2007. The stock had been trading in the mid-twenties as recently as early July.

## THE PARTIES

10. Plaintiff Jess Sarver has owned RAIT common stock since September 20, 2002, before the acts challenged herein took place. Since then he has owned 500 shares which he continues to hold as of the date of the filing of this Complaint. Mr. Sarver will continue to hold RAIT stock throughout the course of this litigation. Plaintiff will fairly and adequately represent the interests of the shareholders of RAIT in enforcing the rights of the Company.

11. Nominal defendant RAIT is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business located at 2929 Arch Street, 17th Floor, Philadelphia, PA. RAIT is a real estate investment trust ("REIT") that originates secured and unsecured credit facilities including bridge and mezzanine loans, preferred equity investments, trust preferred securities and subordinated debt for private and corporate owners of commercial real estate, REIT's and real estate operating companies and their intermediaries throughout the United States. The Company's stock trades on the New York Stock Exchange.

12. Defendant Betsy Z. Cohen ("Betsy Cohen") has served as Chairman of the Board at the Company since August 1997. Betsy Cohen also served as the Chief Executive Officer of RAIT since its founding in August 1997 through December 2006. Betsy Cohen also serves as Chairman of the Board of The Bancorp Bank and a director of The Bancorp, Inc. Previously, Betsy Cohen served as a director of Hudson United and as the Chairman of the Jefferson Bank Division of Hudson United Bank. Betsy Cohen is also a director of Aetna, Inc. Betsy Cohen is the mother of defendant Daniel Cohen.

13. Defendant Daniel G. Cohen ("Daniel Cohen") has served as a Trustee and Chief Executive Officer at the Company since December 2006. Previously, Daniel Cohen was chairman of the board and Chief Executive of Taberna. Daniel Cohen also serves as the chairman of the board of Cohen Brothers, LLC d/b/a Cohen & Company, or C & Co. and also serves as the Chairman of the Board of Alesco Financial Inc. Daniel Cohen has also served in various capacities as an executive and director of Bancorp. From 1998 to 2000, Daniel Cohen served as the Chief Operating Officer of Resource America Inc., an asset management company. From 1997 to 1999, Daniel Cohen was a director of Jefferson Bank of Pennsylvania. Daniel Cohen is the son of defendant Betsy Cohen.

14. Defendant Edward S. Brown ("Brown") has served as Trustee at the Company since June 1999. Brown has been president of The Edward S. Brown Group since 1985.

15. Defendant Frank A. Farnesi ("Farnesi") has served as Trustee at the Company since December 2006. Farnesi also serves as an advisor or board member to several privately held companies. Previously, Farnesi has served as a member of Taberna's board of trustees, as a board member of Progress Financial Corporation and as a partner of KPMG LLP.

4

16. Defendant S. Kristin Kim ("Kim") has served as Trustee at the Company since October 2003. Kim also serves as a consultant to non-profit organizations. Previously, Kim was president of AllLearn and an attorney at the law firm of Simpson Thacher & Bartlett.

17. Defendant Daniel Promislo ("Promislo") has served as Trustee at the Company since August 1997. Promislo also serves as president and a director of Historical Documents Co. and is also president of Historical Souvenir Co. Previously, Promislo served as managing director and partner of Wolf, Block, Schorr and Solis-Cohen.

18. Defendant John F. Quigley, III ("Quigley") has served as Trustee at the Company since December 2006. Quigley also currently serves as a vice president with Patriarch Management Company. Previously, Quigley was a member of the board of trustees of Taberna and the chief financial officer and chief administrative officer of Storecast Merchandising Corp.

19. Defendant Murray Stempel, III ("Stempel") has served as Trustee at the Company since December 2006. Stempel is currently an executive vice president and chief lending officer at Royal Bank America and a director of Royal Bancshares of Pennsylvania, Inc. Previously, Stempel was a member of Taberna's board of trustees and a senior vice president at Royal Bank America.

20. Defendants Betsy Cohen, Daniel Cohen, Stempel, Farnesi, Kim, Promislo, Quigley and Brown are collectively referred to herein as the "Trustee Defendants."

21. Each of the Trustee Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Trustee Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

5

wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## DUTIES OF THE TRUSTEE DEFENDANTS

22. By reason of their positions as officers, directors and/or fiduciaries of RAIT and because of their ability to control the business and corporate affairs of RAIT, the Trustee Defendants owed RAIT and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage RAIT in a fair, just, honest and equitable manner. The Trustee Defendants were and are required to act in furtherance of the best interests of RAIT and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

23. Each director and officer of the Company owes to RAIT and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Trustee Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

24. The Trustee Defendants, because of their positions of control and authority as directors and/or officers of RAIT, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with RAIT, each of the Trustee Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of RAIT.

25. At all times relevant hereto, each of the Trustee Defendants was the agent of each of the other Trustee Defendants and of RAIT, and was at all times acting within the course and scope of such agency.

26. To discharge their duties, the officers and directors of RAIT were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of RAIT were required to, among other things:

(a) refrain from acting upon material inside corporate information to benefit themselves;

(b) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the Securities and Exchange Commission ("SEC") and the investing public;

(c) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, by, among other things, making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e) remain informed as to how RAIT conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f) ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

27.     Each of the Trustee Defendants, by virtue of his or her position as a director and/or officer of RAIT, owed to the Company and to its shareholders the fiduciary duties of loyalty and good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Trustee Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of RAIT, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders.  The Trustee Defendants were aware or should have been aware that such conduct posed a risk of serious injury to the Company.  The conduct of the Trustee Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Trustee Defendants who collectively comprised all of RAIT's Board during the Relevant Period.

28.     The Trustee Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein, and by failing to prevent the Trustee Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action lawsuits that allege violations of federal securities laws.  As a result, RAIT has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)     Costs incurred to carry out internal investigations, including legal fees paid to outside counsel;

(b)     Costs incurred to investigate and defend RAIT and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment;

(c)     Additional costs in the form of increased directors' and officers' liability and fiduciary liability insurance premiums; and

(d) Costs incurred from directing manpower to correct RAIT's defective internal controls.

29. Moreover, these actions have damaged irreparably RAIT's corporate image and goodwill. For at least the foreseeable future, RAIT will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that RAIT's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## SUBSTANTIVE ALLEGATIONS

30. On June 8, 2006, RAIT entered into an agreement and plan of merger with Taberna which resulted in Taberna becoming a subsidiary of RAIT. Both RAIT and Taberna were real estate investment trusts operated by the Cohen family. Taberna, a private company, provided long-term subordinated debt and preferred securities to REIT's and real estate operating companies. At the time of the merger, each Taberna common share was converted into the right to receive 0.5389 of a RAIT common share, and the Company issued 23.9 million common shares pursuant to the merger.

31. On June 9, 2006, RAIT made an investor presentation on the proposed merger. This presentation emphasized the improved asset diversification and financing which would result from the merger. There was low integration risk because of the shared management culture and operating strategy in existence, as well as both companies' focus on low-risk asset classes and disciplined underwriting policies and procedures. While RAIT had a total return since its January 1998 initial public offering of 369%, Taberna had a total return of 37% since its April 2005 144A offering. Both entities had experienced zero defaults to date. Taberna's specialty was the origination of financing for RAIT's and other real estate operating companies in the forms of TruPS, or trust preferred securities, and subordinated debt.

32. The merger was completed on December 11, 2006. Shortly thereafter, on January 10, 2007 RAIT filed a Form S-3 Registration Statement and Prospectus with the SEC for the sale

9

of common shares, preferred shares and warrants. The Registration Statement and Prospectus described core components of the Company's business to include "a robust origination network, a disciplined credit underwriting process and, through our ownership of Taberna, an ability to finance our business more efficiently through the use of CDO [collaterized debt obligations] transactions. ... Our credit underwriting involves an extensive due diligence process that seeks to identify risks related to each proposed investment before an investment decision is made and, thereafter, to monitor each investment on a continuous basis. As a result of our acquisition of Taberna, we have acquired a platform that we believe will allow us to structure CDO transactions and similar financing arrangements to finance asset growth."

33. Subsequently, the Company filed Form 424B3, a Preliminary Prospectus and Registration Statement with the SEC on January 10, 2007. This Prospectus and Registration Statement was followed by the filing of Prospectus Supplements on January 10 and 12, 2007 for the sale of 8,250,000 common shares. On January 19, 2007, the offering was priced at $34 per share for 10 million shares, with an over-allotment option granted to the underwriters for an additional 1.5 million shares.

34. At the time of the merger, RAIT had an undisclosed net equity exposure of approximately $95 million in connection with TruPS and AHM for which RAIT had not adequately reserved. Defendants knew, but did not disclose, that AHM's ability to make payments of trust preferred securities AHM owed to RAIT was dependent upon the state of the sub-prime mortgage lending market and AHM's position therein. Because of the developing problems in the sub-prime mortgage market, RAIT was at serious risk of non-payment by AHM.

35. On February 21, 2007, RAIT announced fourth quarter and fiscal year 2006 results emphasizing that the merger with Taberna was completed, the investment portfolio totaled $11.2 billion as of December 31, 2006, which included $4.3 billion relating to TruPS and subordinated debentures, $1.3 billion in commercial mortgages and mortgage-related receivables and $0.9 billion of other real estate related investments. The Company recorded a $2.5 million

10

provision for losses for the three months and year ended December 31, 2006, as compared to no such provision for the prior year. There was no further explanation for this provision.

36.    On March 20, 2007, at a Cohen & Co. Investor Conference, RAIT made a presentation explaining the underwriting and credit approval process.

37.    On March 31, 2007, the Company reported results for the quarter ended March 31, 2007emphasizing that total assets under management were $14.0 billion at March 31, 2007, net income of $20.34 million and a provision for loan losses of $3.7 million. Interestingly, no similar provision was recorded for the same period a year earlier. There was no further explanation provided for this provision.

38.    On April 6, 2007, AHM issued a press release announcing that is expected lower income in the first quarter and full year 2007 due to conditions in the secondary mortgage and mortgage-backed securities markets:

> During March, conditions in the secondary mortgage and mortgage securities markets changed sharply. In particular, these markets were characterized by far few buyers offering materially lower prices, both for loan pools and for "AA", "A", "BBB" and residual mortgage securities. These changes had a significant, adverse impact on our Company's first quarter results, reducing our gain on sale revenue and causing mark-to-market losses in our portfolio. While the market may recover, and while we will attempt to restore our gain on sale margins by raising interest rates charged to consumers, our working assumption must be that current market conditions will persist and that our gain on sale margins will not recover through the balance of the year.

Additionally, AHM admitted that it was experiencing high delinquency related charges due to the company establishing additional reserves for increases in non-performing loans.

39.    On May 4, 2007, the Company filed its Form 10-Q for the quarter ended March 31, 2007 with the SEC. In its results of operations, the Company noted that the provision for loan losses relates primarily to investments in residential mortgages and mortgage-related receivables acquired from Taberna on December 11, 2006, having increased to $3.7 million for the three month period ended March 31, 2007 as compared to zero for the three month period ended March 31, 2006.

11

40.     On June 5, 2007, the Company made a presentation at the 2007 NAREIT Investor Forum.

41.     On June 14, 2007, the Company announced that it declared its second quarter 2007 cash dividend on its common shares of $0.84 per common share, which represented an increase of 5% over the prior quarter's dividend.

42.     On June 28, 2007, AHM issued a press release announcing that is would take substantial charges for credit-related expenses in the second quarter stating:

> The Company's delinquency-related charges in the second quarter will be substantial. In addition, the Company expects that it will reclassify a portion of its other comprehensive loss. The reclassification will be charged to current quarter earnings, but will reduce other comprehensive loss by a like amount, and consequently will not affect the Company's equity.

43.     On July 19, 2007, the Company announced that it expects to release it second quarter 2007 results after market hours on August 2, 2007. The Company reported that all obligors under its TruPS and subordinated debentures were current as of June 30, 2007 and that is expected no material change in book value per share based on its quarterly estimate of fair value of its portfolio for the quarter ended June 30, 2007. Also, the Company reported that it expects earnings per share-diluted to range between $0.84 to $0.90 for the quarter ended June 30, 2007.  There was no disclosure as to what prompted this "pre-announcement."

44.     The above statements of the Company alleged herein were materially false and misleading because:

(a)     they failed to disclose that the Company had provided TruPS to AHM and that the payment by AHM of the TruPS was in jeopardy, which could result in at least a net exposure of $95 million, or $1.56 per share of book value; and

(b)     they failed to adequately reserve for the risk of nonpayment by AHM and the loss in value of the associated securities in an amount of approximately $95 million.

45.     On July 31, 2007, the Company finally admitted to an indebtedness owed to it by AHM. The market reaction to the Company's July 31, 2007 statement was swift and negative causing the trading prices of its outstanding securities to decline dramatically.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

46.     Plaintiff brings this action derivatively in the right and for the benefit of RAIT to redress injuries suffered, and to be suffered, by RAIT as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste corporate assets, and unjust enrichment, as well as aiding and abetting thereof, by the Trustee Defendants.  RAIT is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

47.     Plaintiff will represent adequately and fairly the interest of RAIT in enforcing and prosecuting its rights.

48.     Plaintiff is and was an owner of the stock of RAIT during times relevant to the Trustee Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

49.     The members of RAIT's Board of Trustees at the time of the filing of this Complaint were Arthur Makadon and Defendants Betsy Cohen, Daniel Cohen, Stempel, Farnesi, Kim, Promislo, Quigley and Brown.

50.     According to RAIT's proxy statement filed with the SEC on or about April 10, 2007, defendants Brown, Farnesi and Kim were, during the Relevant Period, members of RAIT's Audit Committee.  The Audit Committee is responsible, by its charter, for discussing with management: (a) annual audited financial statements, quarterly financial statements and interim financial information; (b) the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies; and (c) issue as to the adequacy of the Company's internal controls.  Thus, the Audit Committee was, at all times relevant hereto, responsible for overseeing and directly participating in REIT's financial reporting process.

51. Demand upon the Trustees would be futile in this case.

52. The Trustee Defendants are unable to objectively and fairly consider a demand due to various personal, financial and professional inter-relationships that prevent them from acting independently.

    (a) Defendant Betsy Cohen is the mother of Defendant Daniel Cohen.

    (b) Defendants Daniel Cohen, Farnesi, Quigley and Stempel all have longstanding personal, financial and professional inter-relationships resulting from their lengthy common affiliation with Taberna.

    (c) Defendant Daniel Cohen is not independent of several of the RAIT executives at the center of the wrongdoing complaint of here. Defendant Daniel Cohen, Mitchell Kahn (RAIT's Co-President), Jack E. Salmon (RAIT's Chief Financial Officer and Treasurer) and Raphael Licht (RAIT's Chief Administrative Officer, Chief Legal Officer and Secretary) all have longstanding personal, financial and professional inter-relationships resulting from their lengthy common affiliation with Cohen Bros. LLC d/b/a Cohen & Company ("C & Co."). Moreover, Daniel Cohen indirectly owns approximately 60% of the ownership interests in C & Co., and Raphael Licht owns approximately 0.75% of the ownership interests in C & Co.

53. Moreover, in order to bring this suit, all of the directors of RAIT would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do and which they cannot do objectively, thereby excusing demand.

54. RAIT has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Trustee Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for RAIT any part of the damages RAIT suffered and will suffer thereby.

55. The acts complained of herein constitute violations of the fiduciary duties owed by REIT's trustees and these acts are incapable of ratification.

56. Finally, despite the Trustee Defendants' knowledge of the claims and causes of action raised by plaintiffs, the current Board has failed and refused to seek to recover for RAIT for any of the wrongdoing alleged herein.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty

57. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

58. The Trustee Defendants owed and owe RAIT fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe RAIT the highest obligation of good faith, fair dealing, loyalty and due care.

59. The Trustee Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

60. Each of the Trustee Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and/or failed to correct the Company's publicly reported financial results and guidance. These actions could not have arisen as a result of a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

61. As a direct and proximate result of the Trustee Defendants' failure to perform their fiduciary obligations, RAIT has sustained significant damages. As a result of the misconduct alleged herein, the Trustee Defendants are liable to the Company.

62. Plaintiff, on behalf of RAIT, has no adequate remedy at law.

## COUNT II

### Against All Defendants for Abuse of Control

63. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64. The Trustee Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence RAIT, for which they are legally responsible.

65. As a direct and proximate result of the Trustee Defendants' abuse of control, RAIT has sustained significant damages.

66. As a result of the misconduct alleged herein, the Trustee Defendants are liable to the Company.

67. Plaintiff, on behalf of RAIT, has no adequate remedy at law.

## COUNT III

### Against All Defendants for Gross Mismanagement

68. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69. By their actions alleged herein, the Trustee Defendants, either directly or by aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of RAIT in a manner consistent with the operations of a publicly held corporation.

70. As a direct and proximate result of the Trustee Defendants' gross mismanagement and breaches of duty alleged herein, RAIT has sustained significant damages in excess of millions of dollars.

71. As a result of the misconduct and breaches of duty alleged herein, the Trustee Defendants are liable to the Company.

72. Plaintiff, on behalf of RAIT, has no adequate remedy at law.

## COUNT IV

### Against All Defendants for Waste of Corporate Assets

73. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74. As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused RAIT to waste valuable corporate assets. As a result of the waste of corporate assets, the Trustee Defendants are liable to the Company.

75.     Plaintiff, on behalf of RAIT, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.      Against all of the Trustee Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Trustee Defendants' breaches of fiduciary duty, abuse of control, gross mismanagement, and waste of corporate assets;

B.      Directing RAIT to take all necessary actions to reform and improve their corporate governance and internal procedures to comply with applicable laws and to protect RAIT and its shareholders from a repeat of the damaging events that occurred during the Relevant Period;

C.      Awarding to RAIT restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorney fees, accountant and expert fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  August 17, 2007                    **FARUQI & FARUQI LLP**

/s/ Jacob A. Goldberg JAG3869
Jacob A. Goldberg
Attorney ID No. 66399
2600 Philmont Avenue, Suite 324
Huntingdon Valley, PA  19006
Tel: 215-914-2460
Fax: 215-914-2462
email: jgoldberg@faruqilaw.com

and

17

NADEEM FARUQI
ADAM R. GONNELLI
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331

GARDY & NOTIS, LLP
MARK C. GARDY
JAMES S. NOTIS
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

*Attorneys for Plaintiff*